## Commonwealth *v.* Jeffries, Appellant.

Argued November 17, 1972. Before WRIGHT, P. J., JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ. (WATKINS, J., absent).

*Norman Paul Wolken,* with him *Wolken & Landy,* for appellant.

*Robert L. Eberhardt,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, April 12, 1973:
Judgment of sentence affirmed.

---

DISSENTING OPINION BY SPAULDING, J.:
I respectfully dissent.

Appellant Howard Jeffries was convicted of possession of narcotic drugs in the Court of Common Pleas of Allegheny County. He appeals from the judgment of sentence, contending that the police lacked probable cause to arrest him without a warrant.

According to the arresting officer, the circumstances surrounding appellant's arrest were as follows: On the afternoon of November 6, 1970, police officers in an unmarked car observed appellant walking along a street in the city of Pittsburgh. The officer and appellant knew one another from appellant's having been searched at his residence two weeks prior to the date of the instant arrest.[1] When appellant saw the police car, he quickened his pace. On seeing him do so, the officer left the car and began to chase appellant, who then started to run from the officer's pursuit. While giving chase, the officer saw appellant discard a cigaret package under a parked car. On overtaking appellant, the officer directed his partners to detain appellant, while

---

[1] There is no indication that this search revealed anything related to appellant's possessing drugs.

he picked up the discarded package. A search of the package revealed what the police believed to be narcotic drugs. Appellant was then taken into custody. The narcotics in the cigaret package furnished the sole evidence on which appellant's conviction was based.[2]

In order for appellant's arrest to have been lawful, the police must have had probable cause to justify their action. An arrest without a warrant is only constitutionally permissible where "the facts and circumstances within the arresting officer's knowledge or of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe than an offense has been or is being committed and that the person to be arrested has committed or is committing the offense". *Beck v. Ohio,* 379 U.S. 89 (1964). This requires more than the officer's "mere suspicion". *Commonwealth v. One 1958 Plymouth Sedan,* 418 Pa. 457, 211 A. 2d 536 (1965). Each case must be viewed as to its particular facts. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304 (1963).

Appellant contends that the instant case is controlled by *Commonwealth v. Santiago,* 220 Pa. Superior Ct. 111, 283 A. 2d 709 (1971). In *Santiago,* narcotics squad officers spotted the defendant walking along a street carrying two small packets. The officers knew the defendant from his previous narcotics possession arrests. When the officer called out his name the defendant turned and ran. The officer gave chase and caught the defendant as he attempted to climb a fence. As the officer pulled the defendant off the fence, a small silver packet fell to the ground and a second packet was found in the defendant's hand. He was then formally arrested and taken into custody. The contents of those packets furnished the basis for his

---

[2] Appellant's pretrial motion to suppress this evidence was denied after a hearing.

subsequent conviction for possession of narcotics. Santiago's conviction was reversed by this Court. Judge JACOBS, in writing for the majority, found that the police lacked probable cause to arrest: "The fact that a man, who had never been found guilty of a narcotics offense, is walking on a public street in broad daylight with two small packets in his hand would not lead to a conclusion that he was in possession of narcotics. Even to an experienced police officer, such circumstances would not be an indication that a crime was being committed. Any suspicions which would arise from these facts amount to a mere surmise." *Santiago, id.,* at 114.

Judge JACOBS further found that the defendant's flight from the officer's chase provided no additional justification for the arrest. ". . . [f]light, in and of itself, is not sufficient to constitute probable cause for otherwise anyone, who does not desire to talk to the police and who either walks or runs away would always be subject to a legal arrest.[3] Such a procedure cannot be countenanced under the Fourth and Fourteenth Amendments as presently interpreted by the Su-

---

[3] The Commonwealth argues that the police action in the instant case did not amount to an "arrest" until appellant was actually taken into custody. According to this contention, all that preceded the eventual "arrest" would, under the rationale of *Terry v. Ohio,* 392 U.S. 1 (1968), constitute a mere investigatory stop. I cannot agree with such an interpretation. The *Terry* case, itself, states that: "It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime-'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an *individual and restrains his freedom to walk away, he has 'seized'* that person." 392 U.S. at 16. In addition, *Terry* only allowed "stops" "where *the police had reasonable grounds to believe* [the defendant] was 'armed and dangerous'." Such is certainly not the case here. Appellant was surely "seized", *i.e.,* restrained in his freedom to walk away, by the police chase.

preme Court." *Santiago, id.*, at 115, quoting with approval from *United States v. Margeson*, 259 F. Supp. 256 (E.D. Pa. 1966).[4]

The *Santiago* rationale is controlling here.[5] The Commonwealth argues, however, that the instant case is distinguishable from *Santiago* in that while *Santiago* clearly involved a search of the defendant pursuant to the unlawful arrest in question, there was no search here. The Commonwealth contends that appellant's voluntary act of discarding the cigaret package prior to his apprehension brought the package and its contents into "plain view", and that the police could then rightfully seize it without a search of appellant. While it is true that "objects falling in the plain view of an officer *who has the right to be in the position to have that view* are subject to seizure and may be introduced in evidence," *Harris v. United States*, 390 U.S. 234, 236 (1968) (emphasis added), the "plain view" doctrine is applicable only where the police can lawfully justify their presence or vantage point. Here it was only by virtue of the initial impermissible conduct of the police, in pursuing an unsuspicious pedestrian, that the package was discarded into "plain view". The police did *not* have a "right to be in the position" where they could see the contraband in "plain view". "Where an entry or an arrest is illegal ab initio, the 'plain view' doctrine is inapplicable. This is true even if the defendant himself reveals the illegal goods to police offi-

---

[4] In *Santiago*, the court indicated that such flight, coupled with other factors, might constitute probable cause. Here, as in *Santiago*, there were no factors coupled with flight which warranted the chase by the police. Also as in *Santiago*, appellant had no prior narcotics convictions, nor was the contraband visible.

[5] Indeed, this case may present even less cause for arrest than was the case in *Santiago*, where, unlike here, the defendant had a history of drug arrests and was seen carrying two small packets.

cers." *Commonwealth v. Watkins*, 217 Pa. Superior Ct. 332, 334 (1970).

Since the evidence should have been suppressed, I would reverse the judgment of sentence and discharge appellant.

HOFFMAN, J., joins in this dissenting opinion.