Commonwealth *v.* Jeffries, Appellant.

Argued September 25, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Norman Paul Wolken,* with him *Wolken & Landy,* for appellant.

*Louis R. Paulick,* Assistant District Attorney, with him *Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, November 26, 1973:

This is an appeal from an order of the Superior Court,[1] affirming the judgment of sentence imposed

---

[1] 226 Pa. Superior Ct. 471, 303 A. 2d 833 (1973). [Judge SPAULDING filed a dissenting opinion in which Judge HOFFMAN joined.]

upon appellant, Howard Jeffries, following his conviction of possession of narcotic drugs after trial before a judge sitting without a jury. We reverse because of the admission at trial of certain evidence obtained by the police in violation of the Fourth Amendment.[2]

The record discloses the following pertinent facts.

On the afternoon of November 6, 1970, four police officers in an unmarked police automobile observed Jeffries walking along a public street in Pittsburgh. One officer testified when Jeffries saw the officers, he "quickened his pace". Upon seeing him do so, the officer left the police vehicle and started to pursue Jeffries, who then began to run. While giving chase, the officer observed Jeffries throw a cigarette package under an automobile parked along the street. Shortly thereafter, the officer overtook Jeffries and directed him to stand against a wall. At that moment the other officers arrived on the scene and they were told by the officer, who apprehended Jeffries, to "hold him one minute". The officer then recovered the cigarette package from underneath the parked vehicle, and it was found to contain several foil-wrapped packages of a substance later determined to be heroin.

Jeffries argues the police had no lawful right to chase him and arrest him, and the fruits of the unlawful police activity should have been suppressed. The Commonwealth counterargues the police had probable cause to pursue and arrest Jeffries, or alternatively, his conduct gave them cause to conduct an investigatory stop, thus the evidence was properly admitted since it was not the fruit of illegal activity. Moreover, the Commonwealth argues the evidence was obtained independent of an arrest or search; hence, the legality of the arrest merits no consideration. Given this premise, the

---

[2] A pretrial motion to suppress the evidence was denied after a hearing.

Commonwealth contends the narcotics should be admitted under the doctrine of abandoned property, or under the plain view doctrine.

The lower court found the action of the police officers constituted an arrest with probable cause.[3] The law is clear a warrantless arrest is constitutionally invalid unless based on probable cause,[4] which is defined as, facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information, sufficient in themselves to warrant a man of reasonable caution to believe an offense has been or is being committed, and the person to be arrested has committed the offense.[5]

In the instant case, the Commonwealth contends that Jeffries' flight supplied the necessary factual foundation for probable cause. This Court, however, has consistently rejected the contention that flight, in and of itself, constitutes probable cause to arrest. In *Commonwealth v. Pegram*, 450 Pa. 590, 301 A. 2d 695 (1973), this Court stated: "Although flight may indicate, to some degree, 'consciousness of guilt', Commonwealth v. Collins, 440 Pa. 368, 371, 269 A. 2d 882, 884 (1970), flight standing alone . . . is not sufficient to

---

[3] In *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A. 2d 304 (1963), this Court defined arrest in the following manner: "Officers are not required to make any formal declaration of arrest or use the word 'arrest' . . . nor to apply manual force or exercise 'such physical restraint as to be visible to the eye' in order to *arrest* a person. . . . An arrest may be accomplished by 'any act that indicates an intention to take [a person] into custody and that subjects him to the actual control and will of the person making the arrest.' " Id. at 68, 190 A. 2d at 311.

[4] See *McCray v. Illinois*, 386 U.S. 300, 87 S. Ct. 1056 (1967); *Commonwealth v. Bailey*, 448 Pa. 224, 292 A. 2d 345 (1972); *Commonwealth v. Murray*, 437 Pa. 326, 263 A. 2d 886 (1970); *Commonwealth v. Marino*, 435 Pa. 245, 255 A. 2d 911 (1969); *Commonwealth v. Brayboy*, 431 Pa. 365, 246 A. 2d 675 (1968).

[5] See *Beck v. Ohio*, 379 U.S. 89, 85 S. Ct. 223 (1964).

establish probable cause for an arrest. As the Superior Court noted in Commonwealth v. Santiago, 220 Pa. Superior Ct. 111, 114-15, 283 A. 2d 709, 711 (1971): 'The Commonwealth urges that even if this does not constitute probable cause the subsequent flight created valid grounds for the arrest. The Court in United States v. Margeson, 259 F. Supp. 256 (E.D. Pa. 1966), considered the question of whether flight could constitute probable cause and stated: "Flight, coupled with other factors, such as knowledge of the defendant's prior criminal record or the sight of contraband or screams for help or reliable information that defendant had attempted to commit or had committed a crime, may be strong indication that there is something that those fleeing wish to hide from the police and may constitute probable cause for arrest. . . . However, flight, in and of itself, is not sufficient to constitute probable cause for otherwise anyone, who does not desire to talk to the police and who either walks or runs away would always be subject to a legal arrest. Such a procedure cannot be countenanced under the Fourth and Fourteenth Amendments as presently interpreted by the Supreme Court." ' " Id. at 593-94, 301 A. 2d at 697. See also *Commonwealth v. Roscioli,* 454 Pa. 59, 309 A. 2d 396 (1973); *Commonwealth v. Bailey,* 448 Pa. 224, 292 A. 2d 345 (1972). Since there were none of the above mentioned factors to couple with the element of flight, probable cause did not exist to arrest Jeffries.[6]

---

[6] The lower court found that even if probable cause did not exist prior to the arrest, the recovery of the narcotics from underneath the parked vehicle provided an adequate foundation for probable cause. We disagree with this reasoning. It is well settled that evidence discovered after an arrest, cannot be considered when determining whether probable cause existed for the arrest. Cf. *Henry v. United States,* 361 U.S. 98, 80 S. Ct. 168 (1959).

Notwithstanding this finding, the Commonwealth attempts to justify the officer's action as a stop or seizure under *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868 (1968), and *Sibron v. New York,* 392 U.S. 40, 88 S. Ct. 1889 (1968). We cannot, however, agree with this position.

This Court interpreted *Terry* and *Sibron* in *Commonwealth v. Hicks,* 434 Pa. 153, 253 A. 2d 276 (1969), and stated: "[E]ven if probable cause to arrest is absent, the police officer may still legitimately seize a person, such as Hicks was seized in this case, and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, *if the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot* and that the person with whom he is dealing may be armed and dangerous." [Emphasis supplied.] Id. at 158-59, 253 A. 2d at 279. To come within the *Terry* rule, therefore, the police must be able to point to articulated facts which give rise to the reasonable belief criminal activity is afoot. See also *Commonwealth v. Swanger,* 453 Pa. 107, 307 A. 2d 875 (1973), and *Commonwealth v. Pegram,* supra. Instantly, there is not one fact which would give rise to the reasonable belief Jeffries was involved in criminal activity. Jeffries was simply walking along a public street in Pittsburgh in broad daylight and when he saw a police officer he knew, he "quickened his pace" and started to run when the officer began to chase him. This is not enough to justify a seizure under *Terry,* as interpreted by this Court, absent some other factor which would give rise to suspicion of criminal conduct.

Thus, it is clear the police had no right to "arrest" or "seize" Jeffries and the action of the police in chas-

ing him and subsequently arresting him was a violation of his Fourth Amendment right.[7]

The Commonwealth, however, asserted that notwithstanding a finding of primary illegality, the evidence should be admissible because there was no search and the property was abandoned. In *Commonwealth v. Pollard,* 450 Pa. 138, 299 A. 2d 233 (1973), this Court was confronted with this exact question and stated:

"Although abandoned property may normally be obtained and used for evidentiary purposes by the police, such property may not be utilized where the abandonment is coerced by unlawful police action.

"As the Fifth Circuit noted in Fletcher v. Wainwright: 'Several courts have considered this situation and have uniformly held that the initial illegality tainted the seizure of the evidence since the throwing was the direct consequence of the illegal entry. In such a situation it cannot be said that there was a "voluntary abandonment" of the evidence. The only courts that have allowed the seizure of evidence that was thrown out the window have emphasized that "no improper or unlawful act was committed by any of the officers prior to the evidence being tossed out the window.' 339 F. 2d 62, 64 (5th Cir. 1968) (citation omitted). See

---

[7] In *Terry,* Mr. Chief Justice WARREN stated: "We have recently held that 'the Fourth Amendment protects people, not places,' Katz v. United States, 389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed. 2d 576 (1967), and wherever an individual may harbor a reasonable 'expectation of privacy', id., at 361, 88 S. Ct. at 507 (Mr. Justice HARLEN, concurring), he is entitled to be free from unreasonable government intrusions. Of course, the specific content and incidents of this right must be shaped by the context in which it is asserted. For 'what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.' Elkins v. United States, 364 U.S. 206, 222, 80 S. Ct. 1437, 1446, 4 L. Ed. 2d 1669 (1960). *Unquestionably petitioner was entitled to the protection of the Fourth Amendment as he walked down the street in Cleveland.*" [Emphasis supplied.] 392 U.S. at 9, 88 S. Ct. at 1873.

also Hobson v. United States, 226 F. 2d 890, 894 (8th Cir. 1955)."

"Here the record establishes that the police officer's unlawful and coercive action was the causative factor which motivated appellant's abandonment." Id. at 143-44, 299 A. 2d at 236. The causative factor in the abandonment presently under consideration was the unlawful and coercive action of the police in chasing Jeffries in order to seize him. This is not a situation where the party spontaneously abandons the property upon sight of the police, or where the police are not involved in an unlawful act towards the accused. Cf. *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A. 2d 727 (1972). We instantly have an unlawful act which motivated the abandonment.

Lastly, the Commonwealth argues the evidence should be admitted under the plain view doctrine. In *Harris v. United States*, 390 U.S. 234, 88 S. Ct. 992 (1968), the United States Supreme Court stated that objects falling in the plain view "of an officer who has a right to be in the position to have that view" are admissible evidence. In the instant case it cannot be questioned the officer had a right and duty to be on the street, but the only reason he had a "plain view" of the object seized is because of his unlawful act of attempting to seize Jeffries. Thus, the officer had no lawful right to be in the position to have the view. Moreover, inherent in the plain view doctrine is the principle the seized object must not have been put in plain view as a result of unlawful police conduct. Thus, the doctrine does not apply in the instant case to validate the evidence.

Consequently, the evidence should have been suppressed as fruit of the primary illegality. Cf. *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407 (1963).

Judgment reversed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

DISSENTING OPINION BY MR. JUSTICE POMEROY:

I agree wholeheartedly with the majority that Officer Rhodes did not have probable cause to make an arrest when he set out in pursuit of defendant Jeffries. Nor do I understand the Commonwealth to argue otherwise. The question here is whether, granted the absence of probable cause, there were nonetheless sufficient facts to justify an investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) and *Adams v. Williams*, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). In light of these decisions, I am not persuaded that the officer's conduct violated the constraints of the Fourth Amendment.

In *Terry*, the United States Supreme Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 20 L. Ed. 2d at 906. Expanding on this theme, the Supreme Court remarked in *Adams* that "the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." 407 U.S. at 145, 146, 32 L. Ed. 2d at 616, 617.[1]

---

[1] Both *Terry* and *Adams* involved "frisks" of defendants on less than probable cause, during the course of which weapons were seized by the police. These intrusions on individual rights were far greater than anything which occurred in the instant case up until the moment when the cigarette pack was examined and Jeffries was

In the case at bar, the initial encounter between Officer Rhodes and Jeffries took place in broad daylight on a well-traveled thoroughfare. The parties were well acquainted with each other. Jeffries testified that he had known Rhodes "all his life", and was "more than aware" of Rhodes' occupation as a narcotics officer.[2] He did not begin to flee until he had recognized Rhodes. Even if the flight did not by itself constitute probable cause for an arrest, it certainly gave Officer Rhodes reasonable grounds for suspecting that some criminal activity was afoot. I believe that the facts shown constituted an "appropriate circumstance" for further police investigation, and that an "appropriate manner" of approaching a fleeing suspect is to give chase. The conduct which induced Jeffries to discard the cigarette pack was not unconstitutional; it was good police work.

---

formally arrested. The extent of the intrusion is a critical factor in testing the reasonableness of police conduct under *Terry,* "for there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' Camara v. Municipal Court, 387 U.S. 523, 534-535, 536-537, 18 L. Ed. 2d 930, 938-940, 87 S. Ct. 1727 (1967)." 392 U.S. at 21, 20 L. Ed. 2d at 905.

[2] Notes of Testimony, 30a. Rhodes had visited Jeffries' home two weeks earlier and had told Jeffries that he knew some of his friends were involved in drugs.