J-S77014-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEFFREY AURSBY | |
| Appellant | No. 3082 EDA 2013 |

Appeal from the Judgment of Sentence entered September 12, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0002749-2012

BEFORE:  STABILE, JENKINS, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED FEBRUARY 19, 2015**

Jeffrey Aursby appeals from the judgment of sentence entered for his convictions of violating the Uniform Firearms Act (VUFA).  He argues the trial court erred in denying his motion to suppress, because police officers lacked reasonable suspicion to perform an investigative detention of him.  We affirm.

On January 12, 2012, Philadelphia Police Officer Leon Telesford and his partner were on routine patrol at 24th and Indiana Streets in a marked police vehicle.[1]  Officer Telesford was assigned to that area because of a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Unless otherwise noted, we take this summary from the Trial Court Rule 1925(a) Opinion, 6/20/14, at 1-3.

recent string of robberies and shootings. He regarded the area as a "very dangerous, high-crime, high-narcotics area." ***See also*** N.T. Suppression, 7/15/13, at 14-15.

At about 11:43 p.m., Officer Telesford saw a man, later identified as Appellant, walking near the 3000 block of 24th Street. Appellant was closely following a second man walking northbound. Appellant was walking faster than the second man, and closed the gap between them to about one car-length. Appellant was also reaching for his waistband. Officer Telesford had arrested numerous people for illegally carrying handguns. In his experience, those people often carried their weapons in their waistbands. Based on his experience and training, and the above circumstances, Officer Telesford believed Appellant was about to rob the second man.

The officers pulled next to Appellant in the police car with the emergency lights and siren off. Before the officers stepped outside, Appellant looked at the officers, and took off running. In response, the officers yelled, "Police! Stop! Let me see your hands!" Appellant did not comply, so the officers got out of their car and followed him on foot westbound, down Indiana Street. When Officer Telesford was within a few feet of Appellant, he discarded a handgun. Officer Telesford apprehended Appellant, and his partner retrieved the handgun approximately five feet from the point of detention.

Appellant moved to suppress the evidence of his apprehension and subsequent arrest. The trial court denied the motion. After a waiver trial,

the court convicted Appellant of three VUFA[2] and sentenced him to 5 to 10 years in prison. This appeal followed.

On appeal, Appellant contends the stop was illegal. He argues that touching his waistband while walking behind another person at 11:30 p.m. is insufficient reasonable suspicion of criminal activity to justify the officers' subsequent attempt to stop him. He further contends his abandonment of the firearm was the result of police coercion.

Where a trial court denies a motion to suppress,

we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. In so doing, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.[3] Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Bowmaster*, 101 A.3d 789, 792 (Pa. Super. 2014) (quotation omitted).

---

[2] 18 Pa.C.S.A. §§ 6105 (persons not to possess firearms), 6106 (carrying a firearm without a license), and 6108 (carrying a firearm on public property or streets in Philadelphia).

[3] Our Supreme Court has clarified that the scope of appellate review is limited to the evidence produced at the suppression hearing—not the entire record. *In the Interest of L.J.*, 79 A.3d 1079 (Pa. 2013). The decision in *L.J* is not retroactive. *Id.* at 1088-89. The suppression hearing in this case occurred on July 15, 2013, and *L.J.* was decided on October 30, 2013. Therefore, it does not apply here.

"The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." ***Commonwealth v. Carter***, --- A.3d ---, 2014 PA Super 265, 2014 WL 6756271, at *3, 2014 Pa. Super. LEXIS 4539, at *8 (filed Dec. 2, 2014) (*en banc*) (quoting ***Navarette v. California***, 134 S. Ct. 1683, 1687 (2014)). Reasonable suspicion is judged based on the totality of the circumstances. ***In the Interest of D.M. (D.M. II)***, 781 A.2d 1161, 1163 (Pa. 2001). Under the Fourth Amendment and Article I, § 8 of the Pennsylvania Constitution, unprovoked flight in a high-crime area is sufficient reasonable suspicion to justify a ***Terry***[4] stop, *i.e.*, an investigative detention. ***See Illinois v. Wardlow***, 528 U.S. 119, 124-25 (2000); ***D.M. II***, 781 A.2d at 1164, 1165 n.2 (applying ***Wardlow*** and declining to adopt greater state constitutional rights).

Under the totality of the circumstances, Officer Telesford had reasonable suspicion to perform an investigative detention of Appellant. Officer Telesford was on patrol in a marked police car in a neighborhood known for violent crime and drug trafficking. In fact, he was specifically tasked to patrol that area because of a recent string of violent crimes. It was almost midnight, and Officer Telesford saw Appellant walking down the

---

[4] ***Terry v. Ohio***, 392 U.S. 1 (1968).

street, making movements that looked to Officer Telesford like a robbery was about to occur. Officer Telesford positioned his police car next to Appellant with the lights and sirens off. Appellant immediately fled before the officers could say anything to him.

Indeed, prior to Appellant's flight, police officers made less of a showing of authority than in **Wardlow**. In **Wardlow**, police were driving in a four-car caravan through a neighborhood known for drug trafficking, prompting Wardlow to flee—an action, which, according to the Supreme Court of the United States, constituted reasonable suspicion to stop. **See Wardlow**, 528 U.S. at 121-22, 124.

Appellant misses the point in attempting to minimize the suspicious nature of his behavior. **Terry** does not require police to observe unquestionably criminal behavior before they may perform an investigative detention. **Commonwealth v. Davis**, 102 A.3d 996, 1000 (Pa. Super. 2014) (quoting **Commonwealth v. Rogers**, 849 A.2d 1185, 1190 (Pa. 2004)). Potential innocent explanations for Appellant's behavior do not negate reasonable suspicion. **Id.**

Appellant argues that "intrusive police conduct prompted by nothing more substantial than an individual's decision to depart when approached by the police[] has traditionally been recognized in Pennsylvania as unlawful." Appellant's Brief at 15 (citing **Commonwealth v. DeWitt**, 608 A.2d 1030 (Pa. 1992); **Commonwealth v. Barnett**, 398 A.2d 1019 (Pa. 1979); and **Commonwealth v. Jeffries**, 311 A.2d 914 (Pa. 1973)). Those three cases

generally held that **flight alone** did not constitute reasonable suspicion under the Fourth Amendment. *DeWitt*, 608 A.2d at 1033-34; *Barnett*, 398 A.2d at 1021; *Jeffries*, 311 A.2d at 916. *Wardlow*, however, holds that unprovoked **flight from police in a high-crime area** constitutes reasonable suspicion. *Wardlow*, 528 U.S. at 124-25. To the extent Appellant attempts to rely upon *DeWitt*, *Barnett*, and *Jeffries*, his reliance is misplaced. None of those cases involved flight from a high-crime area, as here. *See DeWitt*, 608 A.2d at 302 (noting stop occurred in a parking lot of a church which had complained to police about suspicious vehicles, but not noting whether stop occurred in high-crime area); *Barnett*, 398 A.2d at 213 (listing facts found by suppression court, which did not include whether area of police stop was a high-crime area); *Jeffries*, 311 A.2d at 325-26 (holding defendant's "simply walking on a public street in Pittsburgh in broad daylight," quickening his pace upon seeing a police officer, and then running after the officer gave chase was insufficient reasonable suspicion to stop).

In sum, the trial court did not err in denying Appellant's motion to suppress. The arresting officer noticed Appellant acting suspiciously in a high-crime area at night, and Appellant fled unprompted when he saw the police officers' marked vehicle. Under the totality of the circumstances, the officers possessed reasonable suspicion of criminal activity. We affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Jenkins joins the Memorandum.

Judge Strassburger files a Concurring Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/19/2015</u>