J-S02011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
STEPHEN RILEY QUAGLIARELLO :
:
Appellant : No. 1449 EDA 2017

Appeal from the Judgment of Sentence March 28, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0006240-2015

BEFORE: BOWES, J., NICHOLS, J., and RANSOM, J.*

MEMORANDUM BY BOWES, J.: **FILED JUNE 18, 2018**

Stephen Riley Quagliarello appeals from the judgment of sentence imposed following his conviction of possession of a controlled substance and possession with intent to deliver. Specifically, he challenges the September 20, 2016 amended order denying his motion to suppress evidence. We vacate Appellant's judgment of sentence, reverse the order denying suppression, and remand for further proceedings consistent with this memorandum.

In support of it suppression ruling, the trial court made the following findings of fact:

> Officer Jonathan Lakose is employed by Haverford Township Police Department. He has been a police officer for 16 years[, and] has been involved in over 100 drug investigations. [He] is aware of certain areas of Haverford Township that are high-crime and high-drug areas. Officer Lakose is familiar with Barnaby's of America, located at 1901 Old West Chester Pike in

* Retired Senior Judge Assigned to the Superior Court.

Haverford Township[, but] would not specify Barnaby's or its adjacent parking lots as high-crime or high-drug areas[, and] does not know of previous observations by the narcotics unit of that area. Officer Lakose has previously made arrests for drug possession in the parking lot of Barbaby's, the most recent for possession of marijuana.

On the night of September 26, 2015, Officer Lakose was on assignment, in full uniform and in a marked "ghost" police vehicle parked in the parking lot located between 200 and 300 feet away from Barnaby's. "Ghost" police vehicles are characterized by reflective "POLICE" lettering printed on the side of a vehicle that is otherwise unmarked. At that time[,] Officer La[k]ose observed a single male exit the bar and enter a dark-colored Infiniti. Officer La[k]ose observed the vehicle for several moments and the vehicle did not start nor appear as if it was going to leave. Several moments later, two other individuals exited the bar and entered the vehicle Officer Lakose was watching. Officer La[k]ose continued to watch the vehicle for several minutes. The vehicle did not start throughout the duration of Officer La[k]ose's observation. After observing the vehicle[,] Officer [L]a[k]ose determined the vehicle was not intending to leave. Based on [his] experience and training[,] he suspected the occupants of the vehicle were engaged in illegal narcotics activity.

Officer La[k]ose approached the vehicle in his car. He did not activate his overhead lights. [He] parked his vehicle behind the dark-colored car, "in a manner that the vehicle could have backed out if it intended to or needed to …." [He] got out of his vehicle and approached the driver's side and engaged the driver in conversation. [He] did not have his gun drawn. [He] asked the occupants of the car what they were doing[, and] observed the driver's hands shaking, lips quivering and a very apparent appearance of nervousness. Officer La[k]ose did not recall the driver appearing drunk o[r] intoxicated in any way. At that point, Officer La[k]ose highly suspected that there was criminal activity going on and he requested backup. Several other units responded. The vehicle's ownership was connected to the driver.

[Appellant] was sitting in the front passenger seat. At some point after backup had arrived, while Officer La[k]ose was speaking with the driver, Officer Lakose could clearly see

- 2 -

[Appellant] concealing something under the front passenger seat. At that time, fearful that [Appellant] may have been attempting to conceal a weapon, Officer La[k]ose requested [Appellant] to exit the vehicle. Based on [Appellant's] body language and Officer Lakose's experience, Officer Lakose believed [Appellant] was going to flee on foot. For officer safety and to continue the investigation, Officer La[k]ose detained and handcuffed [Appellant] and then continued to question the driver. Officer La[k]ose had previously made many arrests for weapons possession while working in the City of Coatesville, and he was "familiar with the types of furtive movements that people who are concealing things [make]. Underneath the seat is a very common place to conceal objects such as weapons." After [Appellant] was detained, Officer La[k]ose searched the area where [Appellant] was seated. The search produced several baggies of cocaine. [Appellant] was then arrested and taken to the police station to be processed. [Appellant] was not the owner of the dark-colored car.

Amended Order, 9/20/16, at 1-5 (paragraph numbers omitted, formatting altered, and citations to the record omitted).[1]

Appellant was subsequently charged with possession of a controlled substance and possession with intent to deliver. He filed an omnibus pretrial motion, which included a motion to suppress the cocaine found under the passenger seat. The trial court conducted a suppression hearing and, on July 15, 2016, entered an order denying the motion to suppress. Appellant filed a motion for reconsideration, and the trial court conducted another hearing. On September 20, 2016, the trial court entered an amended order again denying the motion to suppress. In its amended order, the trial court

_____

[1] We discuss *infra* how this recitation of facts is not supported by the record.

determined that, while Appellant had standing to assert a constitutional violation, he nevertheless could not prevail on a suppression motion challenging the constitutionality of the search because he did not establish a reasonable expectation of privacy in the passenger area of the vehicle.

Following a bench trial held on January 10, 2017, the trial court found Appellant guilty of possession of a controlled substance and possession with intent to deliver. On March 28, 2017, the trial court sentenced Appellant to an aggregate term of three to twenty-three months incarceration. Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. This matter is now ready for our review.

Appellant raises the following issues:

I. Whether the suppression court erred when it did not find Appellant was seized in violation of the Pennsylvania and United States Constitutions when Officer Lakose ordered Appellant back into the vehicle, which required reasonable suspicion or probable cause, and, at the time of Appellant's seizure[,] Officer Lakose articulated only that Appellant exited a bar with two other individuals, sat in the passenger seat of a vehicle which remained stationary, appeared nervous, and attempted to exit the vehicle?

II. Whether the suppression court erred in failing to suppress evidence obtained in violation of the Pennsylvania and United States Constitutions on the basis that Appellant had no reasonable expectation of privacy in the vehicle where evidence was discover[ed] subsequent to Appellant[']s unlawful seizure?

Appellant's brief at 2 (capitalization omitted).

On appeal from the denial of a suppression motion,

> Our standard of review . . . is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Galendez*, 27 A.3d 1042, 1045 (Pa.Super. 2011) (*en banc*) (citation omitted). Additionally, "appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pretrial motion to suppress." *Commonwealth v. Bush*, 166 A.3d 1278, 1281-82 (Pa.Super. 2017) (citation omitted). "It is within the suppression court's sole province as fact-finder to pass on the credibility of witnesses and the weight to be given their testimony." *Id*. at 1282 (citation omitted).

To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty. *See Commonwealth v. Reppert*, 814 A.2d 1196, 1201 (Pa.Super. 2002) (*en banc*). For this purpose, courts in Pennsylvania have defined three types of police interaction: a mere encounter, an investigative detention, and a custodial detention. A mere encounter is characterized by limited police presence, and police conduct and questions that are not suggestive of

coercion. Such encounters do not obligate the citizen to stop or respond and, consequently, need not be supported by any level of suspicion. *See id.* Thus, the hallmark of a mere encounter is that the subject is free to decline to interact with the police or to answer questions, and is also free to leave at any time. *See Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa.Super. 2000).

If, however, a police presence becomes too intrusive, the interaction must be deemed an investigative detention or seizure. An investigative detention, by implication, carries an official compulsion to stop and respond. *Id*. Since this interaction has elements of official compulsion it requires "reasonable suspicion" of unlawful activity. *Id*. Finally, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. *Id*.

To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person would have thought he was being restrained had he been in the defendant's shoes. *Reppert*, *supra*, at 1201-02. Examples of

circumstances that might indicate a seizure include the threatening presence of several officers or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. **See Commonwealth v. McClease**, 750 A.2d 320, 324-25 (Pa.Super. 2000).

Initially, we conclude that the trial court's factual findings are not supported by the evidence presented at the suppression hearing, and we are therefore not bound by them. In its factual findings, as set forth in the amended order, the trial court misconstrued the order of events, as presented at the suppression hearing. Specifically, Officer Lakose testified that, after he had initially approached the vehicle, and began speaking with the driver, Appellant briefly exited the vehicle before Officer Lakose, believing Appellant was about to flee, ordered him to get back in the vehicle. **See** N.T. Suppression, 6/3/16, at 12-14, 36-37. The trial court overlooked Officer Lakose's testimony that only **after** Appellant had been ordered to get back in the vehicle did he see Appellant reach under the passenger seat. **Id**. at 18-20. According to Officer Lakose, upon viewing this action, he removed Appellant from the vehicle, placed him in handcuffs, and the area under the passenger seat was searched, resulting in the discovery of the cocaine. **Id**. at 19-20. The trial court's omission of Officer Lakose's directive and its erroneous recitation of the facts is fatal to its analysis, and critical to our determination herein.

Notably, Officer Lakose's statement to Appellant was neither a question nor a suggestion. Rather, he "ordered" Appellant to get back in the vehicle. *See* N.T. Suppression, 6/3/16, at 14, 36-37. Moreover, Officer Lakose's show of authority was bolstered by the presence of several other police officers that he had summoned to the scene. *See id*. at 18; *see also id*. at 37-38 (wherein Officer Lakose stated that at least three or four other officers had arrived at the scene, in three or four other police vehicles). Under these circumstances, no reasonable person would have felt free to disregard Officer Lakose's order and leave the scene. Rather, a reasonable person in Appellant's situation would no doubt conclude that any attempt to leave the scene after Officer Lakose's order to stay in the car would have invoked compulsion by the officers. *See McClease*, *supra* at 325. Indeed, Officer Lakose conceded that, upon ordering Appellant to get back into the vehicle, he was "not free to go." *See* N.T. Suppression, 6/3/16, at 37. Accordingly, we conclude that, upon Officer Lakose's utterance of this order, Appellant was seized and an investigative detention commenced. *See id*.

Having concluded that a seizure occurred, we must next determine whether the Commonwealth demonstrated that there was reasonable suspicion to support it. An investigatory detention is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inferences derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion.

*Commonwealth v. Hall*, 735 A.2d 654, 659 (Pa. 1999). The officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks and citation omitted).

Appellant cites to *Commonwealth v. DeWitt*, 608 A.2d 1030 (Pa. 1992), in support of his argument that Officer Lakose lacked reasonable suspicion to seize him. In *DeWitt*, our Supreme Court considered whether furtive movements of vehicle occupants, together with other allegedly suspicious circumstances, created reasonable suspicion. In that case, the defendant was seated in a legally parked vehicle with others when the police approached the vehicle, ostensibly to investigate the potential involvement of the occupants in criminal activity reported in that area. As the police neared the vehicle, they observed the occupants inside making furtive movements as if they were trying to hide something. When the officers reached the vehicle, the defendant attempted to flee on foot and the officers gave chase. When the officers captured and searched the defendant, they discovered on his person marijuana, other controlled substances, and drug paraphernalia. On review, our Supreme Court held that the seizure was illegal because even the combined circumstances of furtive movements, late time of night, previous reports of criminal activity in the area, and flight, did not establish an adequate basis for reasonable suspicion. *See id*. at 1034.

The facts of this case are also akin to those in **McClease**, wherein the defendant was stopped late at night in an area that had previous reports of criminal activity. Prior to the stop, police officers driving by noticed the defendant sitting in his legally parked car with his head down as if he were looking at his hands. As the police vehicle passed the defendant's vehicle, he raised his head and looked at the officers. As he did so, his eyebrows raised, his eyes got wider, and he immediately lowered his body. Upon observing these movements, the officers exited their vehicle and approached the defendant's vehicle. One officer noticed the defendant was attempting to exit the vehicle, at which point the officer ordered him to stay in the vehicle. The defendant complied, but attempted to discreetly toss a marijuana blunt under the car. As the officers drew near the vehicle, they noticed an open container of alcohol and a large amount of cash in the ashtray. They later found cocaine and marijuana in the trunk. On review, we concluded that as soon as the officer ordered the defendant to get back in the vehicle, he was seized, and an investigative detention commenced. **McClease**, **supra** at 325. We further determined the seizure was illegal because a motorist's furtive movements upon the approach of police, even late at night in an area of reported criminal activity, did not establish reasonable suspicion for an investigatory detention. **See id**. at 326.

In the instant case, Officer Lakose had fewer facts to establish reasonable suspicion than did the officers in **DeWitt** and **McClease**.

- 10 -

Although Officer Lakose was concerned that Appellant might be attempting to flee, our Supreme Court has ruled that flight, in and of itself, does not constitute reasonable suspicion of criminal conduct. *DeWitt*, *supra* at 1034. Moreover, as Officer Lakose conceded, the parking lot in question was not considered by police to be a high-crime or high-drug area, nor had it been previously subject to surveillance by the narcotics unit. *See* N.T. Suppression, 6/3/16, at 9-10, 25-26. Officer Lakose observed no illegal activity, weapons or contraband. *Id*. at 34-35. The vehicle in which Appellant was located was lawfully parked in a public parking lot for patrons of the bar from which Appellant and the other individuals in the vehicle had exited only two to three minutes earlier. *Id*. at 26-27, 29. While Officer Lakose described the driver of the vehicle as "extremely nervous" with shaking hands and lips, *see id*. at 14, he made no such observations with regard to Appellant.[2] Rather, the only articulated bases for ordering Appellant to get back in the vehicle were Officer Lakose's statements that "in my experience, when multiple subjects are sitting in a vehicle that time of night outside of a bar . . . my suspicions were aroused that something was

---

[2] Even if Officer Lakose had made the same observations regarding Appellant, it would not, in and of itself, suffice to create reasonable suspicion to support an investigative detention. *See Reppert*, *supra*, at 1205 ("Our courts have determined, on several occasions, that . . . excessive nervousness [does not] provide a sufficient basis upon which to conduct an investigatory detention.").

afoot[,]" and "I was very concerned that he was going to flee on foot, based on his body and my experience." *Id*. at 13-14, 15.

Applying our Supreme Court jurisprudence to the facts of the instant case, the specific and articulable facts observed by Officer Lakose, and any rational inferences drawn therefrom, are insufficient for us to conclude that he possessed the requisite reasonable suspicion to support an investigative detention. Instead, Officer Lakose's suspicion amounted to nothing more than an "unparticularized . . . hunch." *Sokolow*, *supra* at 7. Consequently, the seizure of Appellant was illegal.

In the instant case, the illegal detention occurred when Officer Lakose ordered Appellant to get back in the vehicle without any reasonable suspicion that criminal activity was afoot. A few minutes later, Appellant reached under the passenger seat. Had Officer Lakose not illegally seized Appellant, he would have been free to leave, and could have done so when he initially got out of the vehicle. Thus, the illegal detention was clearly the causative factor in Appellant reaching under the passenger seat, and the cocaine subsequently found there was fruit of the poisonous tree. *See McClease*, *supra*.[3]

_____

[3] Based on the record before us, it is unclear whether the cocaine was already under the passenger seat before Appellant reached there, or whether Appellant placed it there. To the extent that Appellant placed the cocaine there when he reached under the passenger seat, it is fruit of the poisonous tree. *See McClease*, *supra* at 327 (holding that, when an illegal
*(Footnote Continued Next Page)*

Finally, we address the trial court's suppression ruling. Appellant claims that the trial court further erred in denying his motion to suppress on the basis that Appellant had no reasonable expectation of privacy in the area of the vehicle in which the drugs were found. Relying on ***Commonwealth v. Shabezz***, 166 A.3d 278 (Pa. 2017), Appellant argues that he need not prove that he had a reasonable expectation of privacy in the vehicle. He contends that, under ***Shabezz***, when an illegal detention precedes a vehicle search, evidence obtained during the search is tainted by the illegal detention, and is inadmissible against the driver and passengers alike as fruit of the poisonous tree.

In ***Shabezz***, our Supreme Court addressed the question of whether, following an unconstitutional vehicle stop, the Fourth Amendment requires a passenger to demonstrate a reasonable expectation of privacy in those areas of the vehicle that are searched and that yield incriminating evidence. ***Shabezz***, ***supra*** at 284. The High Court ruled that a passenger in a vehicle that was stopped unconstitutionally by police was "seized" under the Fourth

*(Footnote Continued)* ———————————

detention occurs without reasonable suspicion, and causes the defendant to abandon contraband, the contraband is considered fruit of the initial illegality); ***see also Commonwealth v. Matos***, 672 A.2d 769, 774 (Pa. 1996) (stating that the exclusionary rule should be applied to suppress evidence of abandoned contraband when the contraband was abandoned after an initially illegal detention); ***Commonwealth v. Jeffries***, 311 A.2d 914, 918 (Pa. 1973) (holding that when the police unlawfully detain a person, and the unlawful detention motivates the person to abandon contraband that is then discovered by the police, the evidence is tainted as a result of the initial illegality).

Amendment, and had automatic standing to challenge the constitutionality of the search. *Id*. at 287. The Court further ruled that "evidence derived from an illegal automobile search constitutes fruit of the poisonous tree as a result of the illegal seizure (unless the taint is removed), and that no further demonstration of a privacy interest in the area from which the evidence was seized is required by the Fourth Amendment." *Shabezz*, *supra* at 287-89 (rejecting the Commonwealth's argument that the passenger must also demonstrate a reasonable expectation of privacy in the areas of the vehicle within which the incriminating evidence was found). As the Court explained, when the defendant seeking suppression following an illegal vehicle stop is the passenger, the dispositive legal issue is the causal relationship between the traffic stop and the discovery of the evidence, *i.e.*, whether the evidence found in the car was "fruit" of the illegal stop, and the initial illegality has not been removed by other circumstances. *Id*. at 289.

In this case, the exploitation inquiry is readily satisfied. As we have already determined, Appellant was seized, and that the seizure was illegal. Thus, the only remaining inquiry for suppression purposes is the causal connection between the illegality and the evidence discovered, *i.e.*, whether the cocaine was obtained by police exploitation of the illegality. Here, Appellant was ordered by Officer Lakose to get back in a vehicle that was surrounded by several police officers. The police saw him reach under the passenger seat, removed him from the vehicle, handcuffed him, searched

the passenger area, and found the cocaine. The search occurred shortly after Officer Lakose had ordered Appellant to get back in the vehicle. The discovery of the cocaine was a direct and immediate consequence of the seizure, and, thus, was an "exploitation" of the constitutional violation.

Additionally, the record is devoid of any indicia that the taint of the illegal seizure was removed before the police searched the vehicle and found the cocaine. **See Shabezz**, **supra** at 290 ("None of the traditional circumstances that have been found to purge the taint of an unconstitutional act, *i.e.* attenuation, inevitable discovery, independent source, or some intervening act or event, . . . are present in this case."). The search occurred minutes after the seizure, thereby precluding any viable argument that the search was sufficiently attenuated from the seizure so as to purge the taint of the initial illegality. **See id**. Accordingly, the cocaine is fruit of the poisonous tree, which should have been suppressed by the trial court.

We conclude therefore that the seizure of Appellant in this case was illegal. The trial court erred in failing to recognize that illegality and in failing to order suppression of the physical evidence it produced. Consequently, we vacate Appellant's judgment of sentence, reverse the orders denying suppression, and remand for further proceedings consistent with this memorandum.

Judgment of sentence vacated. Orders denying suppression reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/18/18