## No. 26412

## The People of the State of Colorado v. Melvin A. Taylor

(544 P.2d 392)·

Decided December 29, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, Thomas J. Tomazin, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Thomas M. Van Cleave III, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Appellant was convicted of possession of a weapon by a previous offender, in violation of 1971 Perm. Supp., C.R.S. 1963, 40-12-108.[1] We affirm the conviction.

On the afternoon of July 18, 1973, Officers Wagner and Michaud of the Denver police department had completed an investigation of a burglary of an automotive store in the Dahlia shopping center, one of Denver's high-crime areas. They spotted a parked 1963 black Thunderbird, with three men unloading a large pile of clothing from the vehicle. Because of the many items of clothing involved and because of the recent burglary of a nearby clothing store, the officers' suspicions were aroused. They drove up to where the Tunderbird was parked, and approached the suspects on foot. Officer Wagner confronted the appellant, whom he recognized from a previous contact, and asked what he was doing. At about the same time, he subjected appellant to a pat-down search of the outer clothing, and found a loaded .32 caliber revolver. Appellant was then arrested and advised of his constitutional rights. The other two suspects were approached by Officer Michaud. Upon presenting identification, they were soon released. An examination of the clothing in the car failed to turn up any evidence that it had been stolen.

Appellant had been previously convicted of burglary in the Denver district court on December 20, 1971.

I.

Appellant's first argument for reversal is that the statute of which he was convicted, 1971 Perm. Supp., C.R.S. 1963, 40-12-108, is unconstitutional in that it infringes on his right to bear arms under Article

[1] Now section 18-12-108, C.R.S. 1973.

II, Section 13, of the Colorado Constitution, that it is overly broad and excessively vague, and that it may under certain circumstances constitute an unconstitutional delegation of legislative power to the legislative bodies of other jurisdictions. We find no merit in these contentions for the reasons set forth in our decision in *People v. Blue, Brown and Ulibarri*, 190 Colo. 95, 544 P.2d 385. The right to bear arms is not absolute, nor is the statute vague or overbroad. As to the delegation of legislative power argument, for the reasons set forth in *People v. Blue, Brown and Ulibarri, supra,* appellant has no standing to challenge the constitutionality of the statute on that basis, inasmuch as his previous conviction was a Colorado conviction.

## II.

Appellant's second assignment of error relates to the legality of the pat-down which led to the seizure of the revolver concealed on his person. He argues that the trial court erred in admitting the revolver into evidence. Specifically, he argues that the officer lacked probable cause for the search, that no exigent circumstances existed to justify a warrantless search, and that, even assuming sufficient grounds for a temporary detention (*Stone v. People,* 174 Colo. 504, 485 P.2d 495), nothing justified the search for weapons. Again, we find no merit in these arguments.

 Though probable cause is a prerequisite to a valid arrest, both this court and the United States Supreme Court have recognized that:

"* * * a policeman who lacks the precise level of information necessary for probable cause to arrest [need not] simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612.

Decisions of the Supreme Court in *Adams v. Williams, supra, Sibron v. New York,* 392 U.S. 40, 88 S. Ct. 1889, 20 L.ED.2d 917 and *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889, establish that a "stop and frisk" may be conducted where it can be demonstrated that the officer relied on particular facts, not merely inarticulable hunches, and where the scope of the frisk is limited to that which is necessary to the discovery of weapons and the officer has reason to believe that the suspect may be armed and dangerous.

Colo. Sess. Laws, 1972, ch. 44, 39-3-103,[2] which was in effect at the time of the transaction here, provides as follows:

"Stopping of suspect. (1) A peace officer may stop any person, who he reasonably suspects is committing, has committed, or is about to commit a crime and may require him to give his name, address, and an explanation of his actions. Such stopping shall not constitute an arrest.

---

[2] Now section 16-3-103, C.R.S. 1973.

"(2) When a peace officer has stopped a person for questioning pursuant to this section and reasonably suspects that his personal safety requires it, he may conduct a pat down search of such person for weapons."

■ We believe that Officer Wagner acted entirely properly when he frisked appellant. Therefore, the weapon discovered during the course of the search was properly admitted into evidence against the appellant. A more detailed review of the circumstances surrounding appellant's arrest serves to further justify the officer's conduct.

The incident occurred in one of Denver's high-crime areas. Officers Wagner and Michaud were assigned to the "Special Crime Attack Team" (SCAT), a federally funded program, the purpose of which was to attempt to lower street crime, particularly robberies, burglaries, and rapes. When they observed appellant and his companions, the officers' suspicions were aroused because the clothing was piled high in the vehicle. Some weeks before, a nearby clothing store had been burglarized, and it occurred to the officers that the suspects might in some way be involved. Conceivably, too, they had perpetrated a more recent theft, one not yet reported.

Once Officer Wagner approached appellant, he recognized him as a person whom he had previously contacted in connection with a criminal investigation. Wagner also remembered that he had recently seen appellant's name listed on information sheets issued by the police department. These fliers had listed appellant as being armed and possibly dangerous, and as possibly involved in several robberies. Additionally, in this area of Denver an unusual number of those arrested had been found to carry weapons.

In sum, there existed many clearly articulable factors which together warranted the officers in stopping the suspects, including appellant. And Wagner's prior contacts with appellant, together with the police fliers, suggested that appellant might be armed. Wagner did not conduct a full search of appellant, but patted him down. His apprehension as to his own safety was borne out by the discovery of the loaded revolver.

It is true that the clothing in the black Thunderbird was apparently not stolen. But that fact was not and could not have been ascertained with any degree of certainty until after the stop and frisk. We find the officers' behavior reasonable under all the circumstances.

### III.

■ Appellant's final assertion of error is that he was not a previous offender within the meaning of the statute, in that his conviction was invalid. He argues that prior to his plea of guilty to the charge of burglary the court failed to advise him of the nature or elements of that offense. Hence, he asserts, his plea was invalid under Crim. P. 11 and *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L.Ed.2d 274.

After judgment and sentencing in the burglary case, appellant filed a Crim. P. 35 motion to vacate and amend his sentence for the reason that

the sentence was unduly harsh. He did not raise the issue of invalidity of the conviction on the basis that the court failed to properly advise him under Crim. P. 11. Upon denial of his motion, appellant appealed to this court in case No. 26407, and here attempted to have the guilty plea set aside. This court dismissed the appeal on motion of the attorney general, for the reason that the sufficiency of the plea was not raised in the trial court and the issue was not properly before this court. *See People v. Simms,* 185 Colo. 214, 523 P.2d 463; *People v. McClellan,* 183 Colo. 176, 515 P.2d 1127.

The identical issues of alleged invalidity of the burglary conviction is raised here, as was considered in our case No. 26407, and is not properly before this court at this time for the same reason as existed in that case — it was never presented to the trial court for determination. Under these circumstances, we will not permit the judgment of conviction in the burglary case to be collaterally attacked, especially when there is a remedy available.

We find no merit to appellant's argument that the judgment of conviction in the burglary case was invalid.

The judgment is affirmed.

MR. JUSTICE GROVES concurs in part and dissents in part.

MR. JUSTICE ERICKSON concurs in part and dissents in part.

MR. JUSTICE GROVES dissents as to point I and concurs in the remainder of the opinion.

MR. JUSTICE ERICKSON concurring in part and dissenting in part.

I respectfully dissent as to Part II. The temporary detention and pat-down search conducted in this case was, in my opinion, premised on something less than the constitutional standard of "reasonable suspicion." *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). The police officers' original suspicion that a crime was being, or was about to be, committed was based upon their observation of three men unloading a large pile of clothing from a vehicle in a shopping center parking lot. The fact that it was a high-crime area is of little or no relevance. Citizens residing in high-crime areas are no less entitled to the safeguards of the Fourth Amendment than are citizens of low-crime areas. Justification for the police officers' action is further reinforced by the fact that a nearby clothing store was recently burglarized.

The majority opinion specifies neither the recency nor the proximity of the alleged burglary of a nearby clothing store. Proceeding on his shaky suspicions, the officer approached the defendant and asked what he was doing. Before the defendant had time to explain, the police officers began their pat-down search, whereupon they found the weapon. No sufficient explanation is given as to why the police officers believed that their personal safety required such action. Although the police officer remembered seeing the defendant's name on a flyer issued by the police department and the defendant was described as being "armed and possibly dangerous," this information alone does not support a reasonable suspicion that the defendant on this particular occasion represented a grave threat to the officers' safety.

Finally, the ultimate discovery of the weapon is totally without relevance in measuring the reasonableness of an officer's foresight determination that a suspect is armed.

I fear this opinion licenses intrusive invasions of privacy and extends the limits of lawful investigation beyond the limits of *Terry v. Ohio, supra; Adams v. Williams, supra;* and *Stone v. People, supra.*