398 A.2d 1019

COMMONWEALTH of Pennsylvania, Appellant,

v.

**Dennis BARNETT.**

Supreme Court of Pennsylvania.

Argued Nov. 13, 1978.

Decided March 16, 1979.

Steven H. Goldblatt, Deputy Dist. Atty.-Law, Maxine J. Stotland, Asst. Dist. Atty., Philadelphia, for appellant.

Stephen R. Bolden, Philadelphia, for appellee.

Before O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal by the Commonwealth of Pennsylvania is from an order of the Court of Common Pleas of Philadelphia, which suppressed certain physical evidence [1] during the trial of appellee, Dennis Barnett. The suppression court

---

1. As the suppressed evidence will substantially handicap the instant prosecution, this appeal is properly before the court. *Commonwealth v. Wrona*, 442 Pa. 201, 275 A.2d 78 (1971); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963).

held that appellee's arrest was not based upon probable cause and, therefore, certain physical evidence had to be suppressed. We agree with the holding of the suppression court and will affirm its order.

The facts, as found by the Suppression Court, are as follows:

"1.   The defendant was arrested on June 10, 1977 in the City of Philadelphia, Pennsylvania.

"2.   The arrest was without a warrant although a warrant had been issued by the authorities on June 7, 1977, but the arresting officers had no knowledge of the warrant nor any information concerning the defendant.

"3.   On June 10, 1977 at or about 11:15 A.M. Officers Devereaux and Wallace were in plain clothes on patrol in an unmarked car.

"4.   The officers observed the defendant walking in the 900 block of North Percy Street, Philadelphia with his hands in the front pockets of a three-quarter length raincoat.

"5.   The defendant on two occasions looked in the direction of the officers and then ducked behind a parked car as the officers' car passed.

"6.   As the officers stopped and alighted from the car the defendant ran.

"7.   Officer Devereaux called for the defendant to stop without identifying himself as a police officer.

"8.   Officer Wallace pursued the defendant and during the chase saw him discard a 38 caliber pistol and a short distance later a box of ammunition.

"9.   Subsequently Officer Wallace apprehended the defendant at or near 10th and Poplar Streets, Philadelphia, and after a struggle subdued him.

"10.  Later, Officer Wallace recovered the gun and bullets discarded by the defendant."

A ballistics exam revealed that appellee's gun had been used in the June 6, 1977 shooting death of seven-year-old Kent Bennett. Appellee was subsequently charged with

murder and various firearms offenses for the shooting of Bennett. He was also charged with assault, resisting arrest and other firearms violations arising from the June 10, 1977 arrest. While the various charges had been severed for trial, a single suppression hearing was held as only one issue of law was involved.

Following the hearing on the motion to suppress, the court ordered both the pistol and the bullets suppressed. It is from this order that the Commonwealth now . appeals.

In *Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973), we reviewed the following factual situation:

"On the afternoon of November 6, 1970, four police officers in an unmarked police automobile observed Jeffries walking along a public street in Pittsburgh. One officer testified when Jeffries saw the officers, he 'quickened his pace'. Upon seeing him do so, the officer left the police vehicle and started to pursue Jeffries, who then began to run. While giving chase, the officer observed Jeffries throw a cigarette package under an automobile parked along the street. Shortly thereafter, the officer overtook Jeffries and directed him to stand against a wall. At that moment the other officers arrived on the scene and they were told by the officer, who apprehended Jeffries, to 'hold him one minute'. The officer then recovered the cigarette package from underneath the parked vehicle, and it was found to contain several foil-wrapped packages of a substance later determined to be heroin." Id., 454 Pa. at 322, 311 A.2d at 916.

There, we held that flight alone was insufficient to constitute probable cause for arrest. Further, we held that the police had no right to stop Jeffries under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), as the officers were unable to articulate any facts which indicated that criminal activity was afoot. We further held that based on this factual setting, the property was abandoned because of unlawful police coercion, and thus the heroin should have been suppressed. We can find no factual distinction between *Jeffries* and the instant case which is sufficient to

allow the *Jeffries* holding to be distinguished. *Jeffries* thus supports the finding in the instant case that appellee's arrest was not based on probable cause.

The Commonwealth, however, argues that the officers had the right to make a limited investigatory stop. As we stated in *Commonwealth v. Berrios*, 437 Pa. 338, 340, 263 A.2d 342–343 (1970):

> "A policeman may legally stop a person and question him. But he may not without a warrant restrain that person from walking away . . . ., unless he has 'probable cause' to arrest that person or he observes such unusual and suspicious conduct on the part of the person who is stopped . . . that the policeman may reasonably conclude that criminal activity may be afoot . . . ." (Footnote omitted.)

We must thus view the totality of the circumstances to determine whether appellee was being "stopped" or was merely approached for allowable questioning by the officers.

As we stated in *Commonwealth v. Jones*, 474 Pa. 364, 371, 378 A.2d 835, 839 (1977):

> " . . . If a citizen approached by a police officer is ordered to stop or is physically restrained, obviously a 'stop' occurs. Equally obvious is a situation where a police officer approaches a citizen and addresses questions to him, the citizen attempts to leave, and the officer orders him to remain or physically restrains him; here too a 'stop' occurs. A more difficult situation arises where no order or physical restraint is involved and the citizen does not attempt to walk away."

In the instant case, the facts are clear that Officers Devereau and Wallace were attempting to stop appellee. As there was nothing on which to base a belief that criminal activity was afoot, appellee was free to walk away. Yet, when he attempted to leave, the officers chased him down the street. Under these circumstances, the suppression court was correct in finding that the officers did more than merely approach appellee for the purpose of allowable questioning.

The police conduct here amounted to a coercive factor which was the main reason that appellee abandoned the weapon.

■ Finally, the Commonwealth argues that appellee's alleged attempt to shoot Officer Wallace allowed the subsequent seizure of both the pistol and the bullets. We need not, however, address the merits of the Commonwealth's position. While Officer Wallace testified that appellee attempted to shoot him, the suppression court evidently chose not to believe him, for the court's findings of fact contain no mention of the alleged attempt to shoot Officer Wallace. Thus, the Commonwealth has no evidence on which to base a claim of intervening criminal conduct which allowed the admission into evidence of the seized material. As we believe *Jeffries* to be controlling, we must affirm the order of the Suppression Court. See *Commonwealth v. Anderson*, 481 Pa. 292, 392 A.2d 1298 (1978).

Order affirmed.

EAGEN, C. J., took no part in the consideration or decision of this case.

POMEROY, former J., took no part in the decision of this case.

LARSEN, J., files a dissenting opinion in which NIX, J., joins.

LARSEN, Justice, dissenting.

I dissent. We are bound to accept explicit findings of facts unless they are wholly lacking support in the record. *Commonwealth v. Willis*, 483 Pa. 21, 394 A.2d 519 (1978) citing *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977).

In the instant case, the court below made no explicit finding that appellant *did not* attempt to shoot Officer Watson. Thus, the findings of the suppression court indicate a *lacunae* regarding this attempted shooting. This case should be remanded to the suppression court for more specific findings on this factual issue.

NIX, J., joins in this dissenting opinion.