The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Joseph "Cherokee" THOMAS, Defendant-Appellee.

No. 82SA401.

Supreme Court of Colorado, En Banc.

March 28, 1983.

Dale Tooley, Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

Lozow & Lozow, Gary Lozow, Denver, for defendant-appellee.

QUINN, Justice.

The People in this interlocutory appeal challenge the ruling of the district court suppressing six colored balloons containing cocaine seized during a police chase of the defendant. The district court concluded that the officers' chase of the defendant was not supported by either probable cause or reasonable suspicion and, therefore, the seizure was constitutionally infirm. *See U.S. Const.* Amends. IV and XIV; *Colo. Const.* Art. II, Sec. 7. We affirm the suppression ruling.

### I.

The defendant is charged in the Denver District Court with unlawful possession of a schedule II controlled substance, cocaine, on September 16, 1981. Section 18–18–105, C.R.S.1973 (1982 Supp.). The defendant filed a motion to suppress the cocaine on the ground that it was seized during an unlawful arrest or seizure of the defendant's person. A hearing was held on the motion immediately prior to the commencement of trial on August 25, 1982. Upon granting the motion the court continued the trial in order to allow the People to pursue this interlocutory appeal.

The evidence at the suppression hearing established the following events. At approximately 11:00 a.m. on September 16, 1981, Denver narcotics detectives Schuelke and Chavez, along with two other officers, were on routine patrol in an unmarked police vehicle in the vicinity of Washington and Welton Streets, commonly known as Five Points, in Denver, Colorado. Detective Schuelke was driving the vehicle in an easterly direction on Welton Street and stopped for a red light at the intersection of Welton, Washington and 26th Streets. Schuelke looked across the street and observed the defendant, whom he recognized, standing in the parking lot of Church's Fried Chicken store. None of the officers had prior information indicating that the defendant might be engaged in any illegal activity. Schuelke said to the other officers "there's Cherokee." The defendant looked in the direction of the officers and appeared to make eye contact with them. The defendant, according to Schuelke, was "more or less just standing in the lot" at this moment and "wasn't walking toward anything."

The exact sequence of events following the officers' initial eye contact with the defendant is somewhat unclear. According to Detective Chavez, as soon as eye contact was made the defendant started to run toward an adjoining building known as the "shack," which occasionally was used as a gambling establishment. Detective Schuelke also, at one point, testified that the defendant saw the officers and immediately started running toward the "shack." At another point in his testimony Schuelke stated that as he turned the corner in the unmarked police vehicle the defendant walked toward the "shack," put his hand in

his pocket, and then at about the same time that Schuelke drove the police vehicle around the corner, the defendant started to run. In any event Schuelke drove his vehicle on the wrong side of Washington Street and headed toward the defendant because he "assumed at that time [the defendant] was either trying to hide something [or] had something on him." Schuelke stopped the vehicle, and he and the other officers chased the defendant on foot inside the "shack." As they followed him inside, Schuelke saw the defendant throw something into a water pitcher on top of a candy machine in the front room of the building. He ordered the defendant to stop and drew his gun. While Schuelke went to the water pitcher and retrieved the items, which turned out to be six balloons containing cocaine, Detective Chavez took the defendant into custody.

In granting the defendant's motion to suppress the district court found that when the officers observed the defendant in the parking lot "he was reaching for his pocket;" and "then, after reaching in his pocket, [the defendant] observed the police officers and commenced running." The court concluded that the officers' chase of the defendant was based upon bare suspicion only. In addressing the issue of abandonment, which had been raised by the People, the court ruled that the defendant's act of discarding the balloons was the product of an illegal chase. The People on this appeal urge that the police chase of the defendant was based upon a reasonable suspicion which justified a temporary stop for investigation of illegal activity.[1] From this basic proposition the People then argue that the seizure of the balloons was not the product of any illegal police conduct and, therefore, the arrest of the defendant was predicated upon probable cause. The People's argument, in our view, is based upon a faulty assumption, namely, that the officers had reasonable suspicion in the first instance to engage in a chase of the defendant.

## II.

If the officers were justified in chasing the defendant in order to make an investigatory stop, then the defendant's act in discarding the balloons was not the product of an unlawful police intrusion, and the court should not have suppressed the evidence. *See, e.g., People v. Ortega,* 175 Colo. 136, 485 P.2d 894 (1971); *Johnson v. People,* 171 Colo. 150, 465 P.2d 128 (1970). On the other hand, if the officers were not justified in chasing the defendant at the outset, then the defendant's act of discarding the balloons was the product of unlawful police activity, and the court's suppression order should be upheld. *See, e.g., Rios v. United States,* 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); *United States v. Newman,* 490 F.2d 993 (10th Cir.1974); *People v. Severson,* 39 Colo.App. 95, 561 P.2d 373 (1977); *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973). The determinative issue in this case, therefore, is whether the officers' pursuit of the defendant was justified at its inception.

■■■■ Three conditions must exist before a person may be subjected to an investigative stop: (1) there must be a specific and articulable basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the stop must be reasonable; and (3) the scope and character of the stop must be reasonably related to its purpose. *See, e.g., Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Tate,* 657 P.2d 955 (Colo.1983); *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). The reasonable suspicion necessary for an investigative stop must be judged against an objective standard—that is, whether there were specific and articulable facts known to the officer, which taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security. *E.g., Michigan v. Sum-*

---

1. The People also urge that the police officers had probable cause to arrest the defendant. Our holding that the officers lacked reasonable suspicion to chase and stop the defendant necessarily disposes of the People's claim that the officers had probable cause to arrest him.

*mers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Terry v. Ohio, supra.* In determining whether this objective standard has been met the critical focus necessarily centers upon the facts known to the officers immediately prior to the intrusion. Facts uncovered after a chase begins do not enter into the constitutional equation for reasonable suspicion:

> "Stops provoke constitutional scrutiny because they encumber one's freedom of movement. Pursuit that appears designed to effect a stop is no less intrusive than a stop itself. In other words, the officer's right to pursue when a stop appears imminent can be no broader than his right to stop. Thus, the suspicion must be reasonable *before* the pursuit begins. Were the rule otherwise, the police could turn a hunch into a reasonable suspicion by inducing the conduct justifying the suspicion. For present purposes, a stop starts when pursuit begins." *Commonwealth v. Thibeau,* — Mass. —, —, 429 N.E.2d 1009, 1010 (1981).

A review of the evidence in this case clearly establishes that the officers did not have a reasonable suspicion of criminal activity when they took up their pursuit of the defendant. The only articulable and specific facts known to the officers when they began their chase were the following: the defendant appeared to see the officers and then ran to a nearby building with his hand in his pocket. Having no information indicating the defendant might be engaged in illegal activities, the officers made the decision to chase the defendant on the basis of what they perceived to be a furtive gesture, namely, the defendant's putting his hand in his pocket and then starting to run.

The problem with the so-called "furtive gesture" as the basis for a stop is its inherent ambiguity. From the viewpoint of the observing police officer, an innocent move may often be mistaken for a guilty reaction. From the perspective of the person observed, the "furtive gesture" might be impelled by a variety of motives, from an unsettling feeling of being watched to an avoidance of what might be perceived as a form of harassment. *See People v. Superior Court of Yolo County,* 3 Cal.3d 807, 478 P.2d 449, 91 Cal.Rptr. 729 (1970). Then again, a person's movement may not be a reaction to the police at all.

Viewed from a purely objective level of observation, the act of running a short distance to a nearby building, with or without one's hand in the pocket, is an action so universal in character that one can only speculate as to its motivating source. Even when the act of running is motivated by an effort to avoid contact with the police, it still does not constitute the type of specific and articulable fact that is constitutionally sufficient to justify a stop. *See McClain v. State,* 408 So.2d 721 (Fla.App. 1982) (where defendant's behavior indicated only that he wanted to avoid the police, such conduct alone was insufficient for a stop); *State v. Kupihea,* 59 Hawaii 386, 581 P.2d 765 (1978) (action of automobile passengers in looking toward police and crouching down not a justification for stop); *People v. Fox,* 97 Ill.App.3d 58, 52 Ill.Dec. 219, 421 N.E.2d 1082 (1981) (driving away at approach of marked police vehicle not a justification for stop); *Commonwealth v. Barnett,* 484 Pa. 211, 398 A.2d 1019 (1979) (insufficient basis for stop where defendant looked in direction of police, ducked behind parked vehicle, and then ran away when officer got out of police car); *Commonwealth v. Jeffries, supra* (no reasonable basis to justify stop where defendant quickened his pace when he saw a police officer whom he knew and then ran when the officer began to chase him); *Commonwealth v. Stratton,* 231 Pa.Super. 91, 331 A.2d 741 (1974) ("[t]here is no question that flight alone, even upon seeing a police officer, would not be sufficient to justify stopping and searching the defendant"). It is only when a person's effort to avoid police contact is coupled with an officer's specific knowledge connecting that person

to some other action or circumstance indicative of criminal conduct that the evasive action, whether running or otherwise, takes on a sufficiently suspicious character to justify a stop. See generally Sibron v. New York, supra. An officer, for example, who sees a person running from the scene of some reported or observed criminal activity would have a specific and articulable basis in fact to stop that person, as would an officer who comes upon evasive action which is linked to other observed conduct indicative of illegal activity. The record in this case, however, is barren of any such evidence.[2]

■ The facts known to the officers when they commenced their chase of the defendant did not satisfy the threshold constitutional requirement of reasonable suspicion. Because the officers lacked this first requirement for an investigative stop, it is unnecessary for us to consider whether the other requirements for a limited intrusion were satisfied.

## III.

■ We realize that the facts present here are not substantially dissimilar to those in People v. Waits, 196 Colo. 35, 580 P.2d 391 (1978). In Waits, a police officer sitting in a marked police vehicle, partially on and partially off the roadway, looked into his rearview mirror and observed the approach of the defendant's vehicle. The defendant, as he neared the police vehicle, suddenly stopped, backed up and quickly turned around and drove in the opposite direction. Although the defendant's conduct did not amount to a traffic violation, the officer made an investigative stop of the defendant because the incident occurred at 7:45 p.m. in an area that "had a higher-than-average crime rate." In upholding the stop as based upon a reasonable suspicion, and in reversing the trial court's suppression of stolen property subsequently seized by the officer from the defendant's vehicle, this court stated that "it is sufficient to observe here that the clear inference to be drawn from the [defendant's] sudden change of course was that he wished to avoid any police contact." Id. at 39, 580 P.2d at 393.

As previously noted, an effort to avoid police contact, by itself, is insufficient to support a stop. See McClain v. State, supra; State v. Kupihea, supra; People v. Fox, supra; Commonwealth v. Barnett, supra; Commonwealth v. Jeffries, supra; People v. Stratton, supra. Waits holds otherwise, and to this extent it cannot be reconciled with the Fourth Amendment principle that there must be a reasonable suspicion, supported by specific and articulable facts, to justify a limited intrusion into one's personal security. See Brown v. Texas, supra (where police officers observed defendant and another man walking away from each other in an alley in an area with a high incidence of drug traffic, and stopped the defendant for identification and an explanation of his actions, the detention constituted an unlawful seizure because there were no objective facts support-

2. Officer Chavez testified during the suppression hearing that "anytime we enter the Five Points area, we see somebody move very quickly like that, they either have contraband or a weapon or something of that nature on them." Considering the universal character of the suspected activity—running a short distance and putting a hand in the pocket—any conclusion to be drawn from that activity alone would not be the type of reasonable inference from specific and articulable facts that Terry and its progeny require, regardless of the officer's opinion of the area as a "high crime area." In Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the United States Supreme Court considered whether a police officer had reasonable suspicion to stop a defendant who was walking away from another person in an alley where there was a high incidence of drug traffic. In holding that reasonable suspicion was lacking the Court stated:

"There is no indication in the record that it was unusual for people to be in the alley. The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct. In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood.... The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees." 443 U.S. at 52, 99 S.Ct. at 2641, 61 L.Ed.2d at 362–63 (emphasis added).

ing a reasonable suspicion to stop and detain); *Delaware v. Prouse, supra* (stopping an automobile driver upon a public highway for the purpose of checking the driver's license of the operator and the registration of the vehicle constitutes an unreasonable seizure under the Fourth Amendment in the absence of "at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law"); *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (mere fact that automobile occupants appeared to be of Mexican descent insufficient to provide reasonable suspicion that car contained illegal aliens, and stop of car by roving border patrol was violation of Fourth Amendment); *Sibron v. New York, supra* (police officer's observation of Sibron in street conversation with six or eight known addicts during six hour period, and officer's subsequent observation of Sibron in late evening conversation in restaurant with three known addicts not sufficient to support the officer's stopping, placing hand in Sibron's pocket and seizing heroin therefrom; "[t]he inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security"). We therefore expressly overrule our holding in *Waits* that action which does not amount to illegal conduct but is taken simply to avoid police contact is sufficient to support an investigative stop.

We are aware that the weighty social objective of crime prevention might well be served by permitting stops and detentions without any requirement of a reasonable suspicion that criminal activity has occurred or is about to take place. In the absence of specific and articulable facts supporting the reasonable suspicion, however, "the balance between the public interest and [defendant's] right to personal security and privacy tilts in favor of freedom from police interference." *Brown v. Texas, supra* at 52, 99 S.Ct. at 2641, 61 L.Ed.2d at 363. Where, as here, a police chase is not based upon objective criteria pointing to a reasonable suspicion of criminal activity, "the risk of arbitrary and abusive police practices exceeds tolerable limits." *Id.*

## IV.

Because the officers were not able to point to the specific and articulable facts which, taken together with rational inferences therefrom, created a reasonable suspicion of criminal activity on the part of the defendant, their pursuit, stop, and arrest of the defendant were constitutionally infirm. *U.S. Const.* Amends. IV and XIV; *Colo. Const.* Art. II, Sec. 7. The trial court, therefore, properly suppressed the cocaine as the product of the unconstitutional seizure of the defendant's person.

The suppression ruling is affirmed.

HODGES, C.J., and ROVIRA, J., dissent.

ROVIRA, Justice, dissenting:

I respectfully dissent.

I disagree with the majority's conclusion that the officers did not have a reasonable suspicion to justify chasing the defendant. The majority states the correct test for resolving the issue: "whether there were specific and articulable facts known to the officer, which taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's security." At 1274.

The question is whether the defendant's flight upon seeing the police officers, his putting his hand in his pocket as he was running, the fact that this happened in a high-crime area, and the knowledge and experience of the police officers who recognized the defendant ("there's Cherokee" At 1273) created a reasonable suspicion in the officers of criminal activity.

In order to support a finding that a reasonable suspicion was justified, particular supporting facts, not merely "inarticulate hunches," are required, *People v. Taylor,* 190 Colo. 144, 146, 544 P.2d 392 (1975),

although the police may rely on their training and experience. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) This assessment is based upon the totality of the circumstances. *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Detective Chavez testified at the suppression hearing that "based on our experience before, anytime we enter the Five Points area, we see somebody move very quickly like that, they either have contraband or a weapon or something of that nature on them."

In *People v. Waits,* 196 Colo. 35, 580 P.2d 391 (1978), we held that an investigatory stop was justified in circumstances quite similar to those in the case before us. There, a police officer in a marked patrol car observed an automobile approaching him at a distance of seventy-five to one hundred yards. As the automobile neared the patrol car, it stopped suddenly, backed up, turned around, and drove rapidly away. The police pursued the automobile and pulled it over. We stated:

> "Although the police officers in this case did not directly observe the commission of a crime, or even a traffic violation, the appellee's abrupt, evasive maneuver upon confronting their marked police cruiser was clearly sufficient to raise a 'reasonable suspicion' of criminal activity. Without dwelling on the obvious, it is sufficient to observe here that the clear inference to be drawn from the appellee's sudden change of course was that he wished to avoid any police contact. Similarly, the obvious implication of that desire was that the appellee had recently been involved in illegal activity, and feared recognition or that his crime would be detected.

> "Based on these reasonable inferences and the officers' experience in law enforcement, we cannot say that their actions in stopping the appellee's vehicle, for limited investigatory procedures, was unreasonable. To the contrary, in this situation, failure to investigate further might have been considered inconsistent with good police practice."

196 Colo. at 39, 580 P.2d at 393–94 (Footnote omitted).

The same reasoning should apply in the case before us. I believe that the defendant's actions upon seeing the detectives, in addition to the other surrounding circumstances, clearly raised a reasonable suspicion in the officers' minds. As the United States Supreme Court observed in *Sibron v. New York,* 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968), "deliberately furtive actions and flight at the approach of ... law officers are strong indicia of *mens rea* ...." In my view, it defies common sense to conclude that the police were acting unreasonably. Consequently, I believe the court today errs in affirming the suppression ruling and in overruling *Waits.*

The majority also states that "[i]t is only when a person's effort to avoid police contact is coupled with an officer's specific knowledge connecting that person to some other action or circumstance indicative of criminal conduct that the evasive action, whether running or otherwise, takes on a sufficiently suspicious character to justify a stop." At 1275. For this proposition, the majority cites *Sibron v. New York, supra,* 392 U.S. at 66–67, 88 S.Ct. at 1904–05. I believe the majority's conclusion to be incorrect for two reasons. First, the cited opinion was discussing what were proper factors to be considered and not what was required. Second, and more important, *Sibron* was discussing what constitutes *probable cause to arrest,* not what constitutes grounds for an investigatory stop. The majority is thus establishing a rule that suspicion occasioned by a person's flight from police, without more, is unreasonable *per se.* I believe this to be an unrealistic view of the term "reasonable suspicion."

I also disagree with the majority's statement that "[w]here, as here, a police chase is not based upon objective criteria pointing to a reasonable suspicion of criminal activity, 'the risk of arbitrary and abusive police practices exceeds tolerable limits.'" At 1277 (quoting *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979)). The stop here was based upon

objective criteria, and under the facts of this case [1] I perceive little risk of arbitrary and abusive police practices. The majority apparently believes that the police were acting merely on an inchoate hunch, when in fact they had articulable and articulated facts to support their decision.

It was clear that the officers had to act quickly if they were going to act at all. Where immediate action is required a police officer is justified in acting on less objectively articulable evidence than when there is more time for consideration of alternative courses of action.

The officers' experience and judgment are important factors to be taken into consideration, *see Terry v. Ohio, supra,* and in my judgment weigh heavily on the scale in approving the attempted stop.

The question of what amounts to reasonable suspicion is a common-sense question: What would the reasonable police officer believe in light of his training and experience? I can only guess at the majority's definition of "reasonable," but I am certain that it differs from mine. Given the circumstances surrounding the stop, I would venture a guess that virtually all police officers would entertain a suspicion of criminal activity. I fail to see how we can conclude that such suspicion is unreasonable. Accordingly, I would reverse the suppression order.

I am authorized to say that Chief Justice HODGES joins in this dissent.

---

1. While a result cannot justify the means, it is of more than passing interest to note that the reasonable suspicion of the officers was proved correct when they recovered the cocaine that the defendant had in his possession.