**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Steven PEREZ and Loreen S. Perez, Defendants-Appellees.**

**No. 84SA23.**

Supreme Court of Colorado, En Banc.

Nov. 19, 1984.

Norman S. Early, Jr., Dist. Atty., Second Judicial Dist., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Brian Holland, Deputy State Public Defender, Denver, for defendant-appellee Steven Perez.

E. Ricardo Gonzales, Denver, for defendant-appellee Loreen S. Perez.

DUBOFSKY, Justice:

In this interlocutory appeal, the People challenge a Denver District Court order suppressing evidence obtained by Denver police officers from the defendants, Steven Perez and Loreen Perez, in the course of an investigatory stop. We reverse the order of the district court.

On the evening of September 7, 1983, Denver police officers George Herrera and Robert Clair responded to the following transmission from the police dispatcher:

34 and 35, would you both start up to 3413 West 26th Avenue? Guess we got a party en route to that location with a

gun. Evidently a girl was just raped at 2127 Irving, and he's supposed to be going over to this West 26th Avenue with a gun to avenge her.

The officers stopped at the intersection of Julian and West 26th Avenue to wait for assistance. Officer Herrera noticed the defendants standing on the sidewalk slightly beyond 3413 West 26th Avenue. When he turned on the police car's overhead flashing lights, the defendants ran across West 26th Avenue and through a schoolyard. Two blocks west, near West 26th Avenue and Lowell Boulevard, Officer Clair stopped defendant Loreen Perez while Officer Herrera stopped Steven Perez. Shortly thereafter, one of the officers advised the dispatcher: "[W]e are not sure what we have here so you might be on the lookout for the guy with the gun. This may not be connected."

Officer Herrera performed a pat-down search of Steven Perez and felt several items in a pants pocket. The officer reached into the pocket, removed two watches and a ring, and replaced them. Meanwhile, Officer Clair patted-down the purse carried by Loreen Perez; he then opened it and found jewelry. When asked, both defendants provided their names. Detective Robert Vescio arrived, advised Steven Perez of his rights and asked him what he was doing in the area. Mr. Perez's response ·was inconsistent with the direction he had run. Officer Herrera asked Ms. Perez what she was doing in the area and obtained a different but also inconsistent response. Officer Herrera asked Ms. Perez for identification, and she began going through the purse which she was carrying. The officer assisted her with his flashlight, observing prescription bottles as well as bracelets and other jewelry in the purse. Ms. Perez removed one of the prescription bottles from the purse, and the officer noticed that the name on the bottle was not Loreen Perez.

Detective Vescio ordered the defendants' arrest. Using a telephone book, the officers matched the name on the prescription bottles to the address of 2720 Julian Street, one block north of the intersection of Julian

and West 26th Avenue, where Officers Clair and Herrera initially stopped their police car. Denver police officers checked that address and found evidence of a burglary. The resident of the address identified as hers the jewelry, watches and prescription bottles.

The defendants were charged with second degree burglary of a dwelling. Section 18–4–203, 8 C.R.S. (1978 and 1983 Supp.). Before trial, they moved for suppression of all evidence obtained after the police stopped them,[1] asserting that the officers had insufficient justification for the stop.[2] The district court granted the motion, and the People appeal under C.A.R. 4.1.

▮ The requirements of a valid investigatory stop (a *Stone* stop) were set out by this court in *People v. Thomas*, 660 P.2d 1272 (Colo.1983):

Three conditions must exist before a person may be subjected to an investigative stop: (1) there must be a specific and articulable basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the stop must be reasonable; and (3) the scope and character of the stop must be reasonably related to its purpose.

*Id.* at 1274 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Tate*, 657 P.2d 955 (Colo.1983); *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971)). *See also People v. Villiard*, 679 P.2d 593 (Colo.1984); *People v. Wells*, 676 P.2d 698 (Colo.1984). We must determine whether these requirements were met here.

## I.

The defendants allege, and the district court held, that the police did not have a specific and articulable basis for stopping the defendants, relying on this court's holding in *People v. Thomas*, 660 P.2d 1272 (Colo.1983) that flight from police officers, by itself, is not adequate to support a stop. The People also rely on *Thomas*, pointing to *dicta* in that case which states:

It is only when a person's effort to avoid police contact is coupled with an officer's specific knowledge connecting that person to some other action or circumstance indicative of criminal conduct that the evasive action, whether running or otherwise, takes on a sufficiently suspicious character to justify a stop.... *An officer, for example, who sees a person running from the scene of some reported or observed criminal activity would have a specific and articulable basis in fact to stop that person ....*

*People v. Thomas*, 660 P.2d at 1275–1276 (citation omitted, emphasis added). *See also People v. Wells*, 676 P.2d at 702.

Because the defendants, in the area of reported criminal activity, ran from investigating officers, the People assert that the *dicta* from *Thomas* squarely addresses the issue here.[3] The district court noted, however, that while the dispatcher sent the police officers to investigate reports of a single man with a gun, the officers stopped two fleeing persons, one of them a woman. The district court stated that the location of the defendants and the direction of their

1. The evidence suppressed included the purse which had the burglary victim's initials on the outside, prescription medicine bottles bearing the name of the burglary victim found in the purse, jewelry and watches found in Steven Perez's pants pockets, the police officers' observations of these items, and all statements made by the defendants.

2. In addition, Steven Perez moved to suppress all statements made by him to the arresting officers on the basis of an alleged violation of his right to counsel under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This motion was not ruled upon by the district court and is not an issue in this appeal.

3. Loreen Perez argues that the record and district court findings are ambiguous as to whether the defendants were running from the police officers or simply running. Steven Perez argues that the defendants did not run until the officers began their pursuit. Officer Herrera, the officer who first noticed the defendants, testified unequivocally that the defendants began running after the lights on the police car were turned on. Officer Clair remembered seeing the defendants running but did not remember whether the lights were turned on or when the defendants began running. The district court's findings tracked the testimony of both officers. Because the officers' testimony was not inconsistent, we reject the defendants' factual arguments.

flight was not consistent with the information given the police officers by the dispatcher[4] and ruled that under these circumstances the police officers acted unreasonably in stopping the defendants.

We disagree with the district court's ruling. Under the circumstances of this case, the defendants' flight, in response to the officers' approach, from the immediate area of reported violent criminal activity, took on a character sufficiently suspicious to justify a stop. *Thomas,* 660 P.2d at 1275–76. Nothing in the dispatcher's report was inconsistent with the officers' suspicion. The dispatcher's transmission to the officers in this case did not purport to provide a comprehensive description of the reported criminal activity in the area. The record reveals, and the dispatcher's statement reflects, that the dispatch was based on an informant's telephone call rather than first-hand or official information.[5] The dispatcher's statement did not foreclose the possibility that more than one individual might be engaged in criminal activity. The officers had no description of the persons involved in the rape which the man with the gun reportedly intended to avenge. The dispatch did not establish the direction in which suspects might flee. Thus, no circumstance attenuates the reasonable suspicion generated by the defendants' presence in the area of the reported criminal activity coupled with their flight at the approach of the police officers; had any facts cast doubt upon the defendants' connection to criminal activity, a different result might be required.

This case also meets the second prong of the *Stone* test. There is no evidence to suggest that the officers' purpose in stopping the defendants was anything other than to determine whether they were involved in the reported criminal activity. We therefore hold that there was a specific and articulable basis in fact for suspecting the defendants of criminal activity and that the purpose of the stop was reasonable.

## II.

Although we have upheld the legality of the initial stop, it remains to be determined whether the scope and character of the stop were reasonably related to its purpose. *See People v. Thomas,* 660 P.2d at 1274. The scope and character of the stop must be considered with respect to suppression of the statements made by the defendants during the stop, and suppression of the purse, its contents, and the jewelry found in Steven Perez's pockets as fruit of the stop.

The district court ruled only that the police did not have a specific and articulable basis for stopping the defendants; it did not address whether the scope and character of the stop were reasonably related to its purpose. *See People v. Cagle,* 688 P.2d 718 (Colo.1984). This question of fact should be determined by the district court on remand.

We reverse the order of the district court and remand this case for further proceedings consistent with this opinion.

---

**4.** The address where the reported rape occurred, 2127 Irving, is to the southeast of 3413 W. 26th Avenue. The defendants were observed first slightly to the west of 3413 W. 26th Avenue, and they ran to the southwest, a direction away from 2127 Irving.

**5.** The dispatcher's statement is qualified by the terms "guess we got" and "evidently."