**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Dennis Leon MASCARENAS and Daniel Joseph Mascarenas, Defendants-Appellees.**

**No. 86SA117.**

Supreme Court of Colorado, En Banc.

Oct. 20, 1986.

Norman S. Early, Jr., Dist. Atty., Second Judicial District Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

Stephen A. Jones, Lakewood, for defendant-appellee Dennis Leon Mascarenas.

David F. Vela, Colorado State Public Defender, Jeffrey S. Pagliuca, Deputy State Public Defender, Denver, for defendant-appellee Daniel Joseph Mascarenas.

DUBOFSKY, Justice.

The People brought this interlocutory appeal after the Denver district court suppressed evidence consisting of burglary tools and a watch discovered on the floor of the defendants' automobile during an investigatory stop. We reverse the suppression ruling.

I.

On November 2, 1985 at 9:41 p.m. Denver police officer Gerald Whitman received a dispatch call about a burglary at 648 South York Street. Because another officer was proceeding directly to the York street address, Whitman drove south on Gaylord, which is a block west of York, to check for suspects leaving the scene of the crime. About a minute later, as Whitman stopped at the corner of Center and Gaylord a block and a half from the burglary, a 1974 Oldsmobile Cutlass in poor repair drove through the intersection going west on Center. The officer could ascertain that the passenger in the front seat was a young hispanic male. Both occupants of the car looked in the officer's direction as they went through the intersection.

Whitman testified at the suppression hearing that, based on his experience patrolling the Washington Park neighborhood for the preceding three years, he believed that the car and its occupants customarily would not be in the predominantly white middle class neighborhood. Thinking that

the car's occupants could be burglars, Whitman turned onto Center and followed the Cutlass. The Cutlass turned left at the next corner and accelerated to the end of the block, where it turned left again. At the next corner it turned right, and as the car was about to turn right again, its fourth turn in four blocks, Whitman turned on the patrol car's flashing lights and stopped it.

When Whitman approached the car, his flashlight illuminated the backseat where he saw a flashlight, a bent screwdriver, gloves, and a tire iron. Whitman asked the driver, the defendant Dennis Mascarenas, for his license, which he could not produce. Whitman then asked the defendant to get out of the car, and as he did, Whitman noticed a woman's gold wristwatch on the floor of the vehicle. Whitman arrested the driver and his passenger, the co-defendant Daniel Mascarenas, and took them to the scene of the crime, where the shoe of the passenger matched a footprint at the point of forced entry into the house.

After the defendants were charged with second degree burglary (class 3 felony) under section 18–4–203, 8B C.R.S. (1986) and theft (class 4 felony) under section 18–4–401, 8B C.R.S. (1986), they moved to suppress the evidence obtained as a result of Whitman's investigatory stop. The district court granted the motion on March 17, 1986, concluding that the totality of the circumstances did not give Whitman a reasonable and articulable suspicion to make the investigatory stop because the factors set out in *People v. Mascarenas*, 666 P.2d 101 (Colo.1983), were not met and because, under *People v. Thomas*, 660 P.2d 1272 (Colo.1983), evasive action to avoid contact with police officers is insufficiently suspicious to justify a stop. The People filed an interlocutory appeal claiming that the evasive acts of the defendants who did not appear to be likely residents of the neighborhood and the recent report of a burglary in the immediate area established a sufficient basis for an investigatory stop.

II.

In certain circumstances a police officer having less than probable cause to arrest may stop an individual for identification purposes and not violate the fourth amendment prohibition against unreasonable search and seizure. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The requirements of a valid investigatory stop were set out in *People v. Thomas*, 660 P.2d at 1274:

> Three conditions must exist before a person may be subjected to an investigatory stop: (1) there must be a specific and articulable basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the stop must be reasonable; and (3) the scope and character of the stop must be reasonably related to its purpose.

*See also People v. Tate*, 657 P.2d 955 (Colo. 1983); *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971). At issue in this case is the first of these requirements, whether there were "specific and articulable facts known to the officer, which taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security." *Thomas* at 1274; *People v. Wells*, 676 P.2d 698, 701 (Colo.1984).

In determining whether the officer made a valid investigatory stop, the district court considered the totality of the circumstances surrounding the stop. *People v. Savage*, 698 P.2d 1330, 1335 (Colo.1985); *People v. Bell*, 698 P.2d 269 (Colo.1985); *People v. Hazelhurst*, 662 P.2d 1081 (Colo.1983). The court specifically considered the six factors enumerated in *People v. Mascarenas*, 666 P.2d at 108:

> (1) the particularity of the description of the offender or the vehicle in which he fled;
>
> (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred;

(3) the number of persons about in that area;

(4) the known or probable direction of the offender's flight;

(5) observed activity by the particular person stopped; and

(6) knowledge or suspicion that the person or vehicle stopped has been involved in some criminality of the type presently under investigation. 3 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.3, at 84 (1979).

*See also People v. Bell,* 698 P.2d 269 (Colo. 1985). The court determined that there was no description of the vehicle, that the area in which the offender might be found was fairly large and contained at least one bar and a restaurant, and that a probable direction of flight did not include going west on Center, which deadends at Washington Park. With respect to the observed activity, the court, relying on *Thomas,* 660 P.2d at 1275–76, ruled that the evasive action was not coupled with the officer's specific knowledge connecting the defendants to circumstances indicative of criminal conduct.

We disagree with the district court's ruling. Here, unlike *Thomas* where the officers were not responding to reported criminal activity, the defendants' evasive driving tactics in response to the officer's turning to follow them amounted to flight from the immediate area of a reported burglary. *See People v. Perez,* 690 P.2d 853 (Colo. 1984). The objective size of the neighborhood and the most likely direction of flight, two of the reasons given by the district court for ruling that the officer did not have a sufficiently reasonable basis for stopping the defendants, evidence a mechanical application of the *Mascarenas* standards without consideration of the area in which the burglar might be found, given the one minute response time and the fact that the defendants were driving away from the scene of the crime. *See People v. Gurule,* 172 Colo. 159, 471 P.2d 413 (1970). Although the larger neighborhood contained some commercial establishments, the area where Whitman first saw the defendants was residential with little traffic.

Moreover, the nature of the crime, burglary, made it likely that the perpetrators were not residents of the middle class neighborhood. Officer Whitman's experience patrolling the neighborhood allowed him to identify the defendants as persons who were unlikely to be residents. *See People v. Smith,* 620 P.2d 232 (Colo.1980); *see also People v. Cobb,* 690 P.2d 848 (Colo. 1984). When the defendants made four turns in as many blocks, the possibility that they lived in the neighborhood or were going to visit someone in the neighborhood lessened. Given the defendants' evasive actions and their proximity to the location of the reported burglary shortly after the officer received the dispatch call, the officer's suspicion that the defendants were connected to the reported criminal activity was reasonable.

The suppression ruling is reversed.

ERICKSON, J., specially concurs.

ERICKSON, Justice, specially concurring:

I specially concur in the reversal of the suppression order. In my view, the totality of the circumstances, as reflected in the record of the suppression hearing, create an articulable and reasonable suspicion that the defendants were involved in criminal activity and support the initial stop that led to the arrest of the defendants. *People v. Savage,* 698 P.2d 1330 (Colo.1985); *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971).

The defendants were first seen approximately one minute after the burglary was reported and within one block of the scene of the crime. Their car was heading away from the crime in a residential area that had little traffic. The evasive action that was taken by the driver in making frequent turns and periodically accelerating, coupled with the report of the burglary, provided ground for an investigatory stop. *See Peo-*

*ple v. Thomas,* 660 P.2d 1272 (1983). After the car was stopped, the officers articulated suspicion rose to probable cause to arrest by the observation of the burglary tools and the woman's gold watch. *See, e.g., People v. Bell,* 698 P.2d 269 (Colo. 1985).

The fact that the defendants were hispanics in a predominately white, middle class neighborhood was but one factor in the totality of the circumstantial evidence that supported the initial stop. In *People v. Smith,* 620 P.2d 232 (Colo.1980), a Taco John's restaurant in Longmont was robbed and a black male was reported to be the robber. The arresting officer stated that few blacks lived in Longmont. However, his observation of a black in the car leaving the scene of the crime coupled with other circumstances justified the investigatory stop that resulted in an arrest based upon probable cause. *Id.* at 235–36 n. 5. *See also People v. Johnson,* 605 P.2d 46 (Colo. 1980).

The relevant inquiry is whether the specific and articulable facts and permissible inferences under the totality of the circumstances creates a reasonable suspicion to support the stop. In this case, the totality of the circumstances supported the investigatory stop that resulted in probable cause for the arrest and for that reason I concur in the reversal of the suppression order.