The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Leroy JACKSON, Defendant-Appellant.

No. 85CA1199.

Colorado Court of Appeals, Div. I.

Feb. 12, 1987.

Rehearing Denied March 26, 1987.

Certiorari Denied (Jackson) Sept. 8, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Public Defender, Martin J. Gerra, III, Sp. Deputy Public Defender, Denver, for defendant-appellant.

CRISWELL, Judge.

Defendant, Leroy Jackson, appeals from the judgment of conviction entered on a jury verdict finding him guilty of two counts each of aggravated robbery, crime of violence, and third degree assault. Defendant argues that the trial court erred in failing to suppress evidence and in refusing

to instruct the jury on a lesser nonincluded offense. We affirm.

Two men were robbed and assaulted late at night by an individual dressed in dark clothes, including a mask and hood. Defendant was first noticed about three hours later, at approximately 1:45 a.m., by police officer Shelley Weber (Weber), who was driving a police car to a convenience store to assist other officers in an unrelated robbery incident. About a block before Weber reached the store, defendant crossed the street in front of her police car. He was dressed in a black Ninja costume, complete with mask, hood, shirt, long coat and pants. None of his features were visible except his eyes.

When defendant saw Weber's car, he ran. Weber pursued him, radioing for assistance. Defendant was chased by several police officers and eventually was arrested for trespass after he was apprehended on a nearby motel roof. When defendant was searched following his arrest, police found items linking him to the crime for which he was convicted, including a credit card taken from a victim. These items were admitted as exhibits in his trial.

At the time Weber began chasing defendant, she had not received any reports that a person dressed like defendant had been involved in criminal activity. However, she testified that she pursued him because of his peculiar dress, because he was near an area where a recent report indicated that a crime had been committed, and because, when he noticed her police vehicle, he ran. Under these circumstances, the officer said, she felt that he should be stopped to ascertain whether he had any involvement in the convenience store robbery.

## I.

■ Defendant first contends that the trial court erred in not suppressing evidence since, at the time Weber began pursuing defendant, there were no "specific and articulable facts known to the officer, which taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security." *See People v. Thomas,* 660 P.2d 1272 (Colo.1983). If the facts known to Weber when she began chasing defendant could not support a reasonable suspicion of criminal activity, then defendant's subsequent act of trespass, his arrest, and the search were products of unlawful police activity, and the evidence seized should have been suppressed.

Defendant argues that, absent reports that someone dressed like defendant had been involved in criminal conduct, his peculiar costume alone was not sufficient to create the required reasonable suspicion of criminal activity. He asserts that the primary basis for Weber's decision to pursue him was his flight from her, and, relying on the ruling in *People v. Thomas, supra,* he contends that his efforts "to avoid contact with the police" were not "constitutionally sufficient to justify a stop."

However, we are not persuaded by defendant's argument that the circumstances here fit the pattern described in *Thomas.* Rather, we conclude that, under the totality of circumstances here, Weber's decision to stop defendant was supported by a reasonable suspicion of criminal activity. *See People v. Savage,* 698 P.2d 1330 (Colo. 1985).

Unlike the arresting officers in *Thomas,* Weber here was responding to reported criminal activity in the immediate area, and, when defendant saw her marked police vehicle, he attempted to flee. *See People v. Mascarenas,* 726 P.2d 644 (Colo.1986) (defendant's evasive actions when in proximity to location of reported burglary supported reasonable suspicion of criminal activity).

While Weber had not been advised that anyone was fleeing the reported crime scene or that she should be looking for a suspect fitting defendant's description, it was reasonable for her to be alert to the possibility that circumstances could have changed since her last information on the convenience store. *See People v. Mascarenas,* 666 P.2d 101 (Colo.1983). Even

though defendant was in fact not connected with the crime scene Weber was approaching, his evasive actions taken while he was in proximity to that location, coupled with his masked costume and the late hour, supported Weber's reasonable suspicion that he might be connected to reported criminal activity and should be investigated.

In *Thomas*, the "furtive gesture" that the court ruled inadequate to support the investigatory stop had an "inherent ambiguity," consisting as it did solely of the suspect putting his hand in his pocket and then running from police after seeing them. Here, a man dressed like a Ninja warrior in the dead of night, who is heading away from a known crime scene and runs at the sight of a police officer, presents a significantly less ambiguous situation. *See People v. Johnson*, 691 P.2d 751 (Colo.App.1984).

Since Weber's initial pursuit of defendant was lawful, the trial court did not err in refusing to suppress the evidence seized from him following his arrest and subsequent search.

## II.

Defendant also argues that the court erred in refusing to instruct the jury on the lesser nonincluded offense of theft by receiving. We disagree.

The evidence upon which defendant relies to support his tendered instruction is the same evidence which, he claims, suggests that he was not the armed robber. He notes that: neither victim was able to identify him as the robber; he was not arrested until some hours after the commission of the crime and at some distance from the scene; when arrested, he was not armed, although the assailant was reported to be carrying a gun; his coat did not match, in some details, the description provided by the victims; and, aside from the credit card, he did not have in his possession any of the property taken from the victims. Based upon this evidence, defendant asserts that the jury could have determined that he was not the robber, but that he came into possession of the credit card at a later time, either innocently or by receiving the same from the actual perpetrator.

However, had the jury accepted the proposition that defendant was not the robber, it could not have convicted him of the crime of theft by receiving. If one were to accept defendant's assertion that he was not present at the robbery, then, the only evidence that would support a guilty verdict of the crime of theft by receiving as to the credit card would be his unexplained possession of that card. Yet, no jury can infer, based upon such possession alone, that defendant knew or believed that such property was stolen—an indispensable element of the crime of theft by receiving. *Noble v. People*, 173 Colo. 333, 478 P.2d 662 (1970). *See Leonardo v. People*, 728 P.2d 1252 (Colo.1986).

A defendant is entitled to have a jury instructed on a lesser offense, if there is evidence to support that offense, but, if the evidence of record is insufficient to sustain a conviction of the lesser offense, no instruction upon such offense should be given. *People v. Dillon*, 655 P.2d 841 (Colo.1982). Hence, the trial court's refusal to give defendant's tendered instruction was proper.

The judgments of conviction are affirmed.

PIERCE and TURSI, JJ., concur.